1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

7
8
9
10
11
12
13
14
15

| | |
|---|---|
| ARMINDA YU MADRID,<br><br>              Plaintiff,<br><br>       v.<br><br>KMF FREMONT, LLC, KLINGBEIL CAPITAL MANAGEMENT, LTD., JOHNNY RODRIGUEZ, and IZABELA BZOWSKI,<br><br>              Defendants. | Case No. 11-cv-05804 NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 31 |

16
17
18
19
20
21
22
23

        In this disability discrimination action, defendants move for summary judgment under Federal Rule of Civil Procedure 56.  Defendants assert that no disputed material fact exists to show that defendants failed to reasonably accommodate Madrid in violation of the federal Fair Housing Amendments Act.  Madrid opposes the motion, arguing that defendants' refusal to reasonably accommodate Madrid, by not allowing her roommates Mirasol Ubarco and Alfredo Guarin to remain in her apartment as caregivers, was in violation of the FHAA.  Finding the motion suitable for disposition without a hearing under Civil Local Rule 7-1(b), the Court VACATES the November 7, 2012 hearing.

24
25
26

        Because Madrid fails to establish a genuine dispute as to any material fact that defendants violated the FHAA, the Court GRANTS defendants' motion for summary judgment.

27

*//*

28

# I. BACKGROUND

Plaintiff Arminda Madrid, a former tenant of the Marbaya apartment complex, commenced this action on December 2, 2011, asserting claims for discrimination against defendants property owner KMF Fremont, LLC, property management company Klingbeil Capital Management, Ltd. (KCM), regional property manager and KCM employee Johnny Rodriguez, and on-site property manager and KCM employee Izabela Bzowski. FAC ¶¶ 4-6 , Dkt. No. 22. Plaintiff asserts a single cause of action against defendants based on discrimination in violation of the federal Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601 *et seq.* FAC ¶ 29. After the Court granted defendants' motion to dismiss without prejudice, Madrid filed a first amended complaint on May 21, 2012. *See id.*

The gravamen of the first amended complaint is that defendants violated the FHAA by failing to provide Madrid with a reasonable accommodation when defendants refused to allow Mirasol Ubarco and Alfredo Guarin to reside with Madrid as her caregivers. *See id.* Defendants now move for summary judgment, asserting that Madrid's request for reasonable accommodation was pretextual and that it came only after defendants issued a three-day notice to quit in order to initiate eviction proceedings against Madrid. Defs.' Mot. Summ Judg. at 4, Dkt. No. 31-2. Unless otherwise stated, the parties do not genuinely dispute the following facts.[1]

## A. Factual Background

### 1. Madrid's Medical Condition

Madrid suffers from the following medical conditions: fibromyalgia, hypertension, and sleep apnea. FAC ¶ 3. Her symptoms from fibromyalgia include generalized disabling body pain, fatigue, dizziness, and headaches. *Id.*; *see also* Bhandia Decl. ¶ 2,

---

[1] Contemporaneously with its reply, defendants filed evidentiary objections to certain statements in Madrid's declaration in opposition to the motion for summary judgment. Dkt. No. 36-1. The Court specifically addresses one of these objections below. To the extent the Court relies on other evidence to which defendants have objected, defendants' objections are overruled.

1    Dkt. No. 35.  Madrid's medical conditions substantially limit her ability to walk and move

2    about as necessary for activities of daily living, in that she experiences generalized body

3    pain and she easily fatigues when she attempts to engage in such activities.  FAC ¶ 3;

4    Bhandia Decl. ¶ 3.  It is painful and exhausting for Madrid to perform routine household

5    chores including light cleaning, grocery shopping, and taking out the trash.  Pl.'s Opp'n

6    Mot. Summ. Judg. at 2, Dkt. No. 32; Madrid Decl. ¶ 2, Dkt. No. 33.  Madrid is "unable to

7    perform more strenuous household chores such as vacuuming and cleaning floors and

8    bathroom fixtures."  *Id.*

9        **2.  Lease Agreement**

10       On March 27, 2008, Madrid and roommate Pasencia Lasam completed rental

11   applications to rent apartment 120 at the Marbaya apartment complex, located in

12   Fremont, California.  Defs.' Mot. Summ. Judg. at 6, Dkt. No. 31.  Defendant KCM

13   required the submission of a rental application by each potential tenant.  *Id.*  KCM also

14   required potential tenants to consent to a credit check.  *Id.*  Upon approval of Madrid and

15   Lasam's rental applications and credit checks, Madrid and Lasam entered into a

16   residential lease agreement with KCM, on behalf of KMF, on April 8, 2008.  *Id.*  The

17   lease agreement provided that no person, other than Madrid and Lasam, had permission to

18   occupy the premises unless such permission was in writing and signed by the landlord or

19   its authorized agent.  *Id.* at 7; Sandoval Decl. ¶ 5, Ex. 3 (lease agreement).  At no time

20   before, during, or after Madrid and Lasam entered into the lease agreement did Madrid

21   inform defendants that Lasam was Madrid's caregiver.  Sandoval Decl. ¶ 3, Ex. 1 (Madrid

22   Deposition), 44:12-45:3, Dkt. No. 31-5.

23       **3.  Multiple Changes in Occupancy Forms**

24       Madrid had numerous roommates during her tenancy at the Marbaya apartments

25   including: Pasencia Lasam (from April 2008 to June 2008); Joyce De Leon (from January

26   2009 to June 2009); and Suzette Moncada (from July 2009 to September 2009).  Pl.'s

27   Opp'n Mot. Summ. Judg. at 2.  Madrid contends that these roommates, though they had

28   no formal agreement and Madrid did not pay them to do so, acted as informal caregivers

1   to Madrid.  Pl.'s Opp'n Mot. Summ. Judg. at 2; Madrid Decl. ¶ 3.[2]

2       With each roommate, Madrid submitted to KCM a form entitled "Changes In

3   Multiple Occupancy."  Sandoval Decl. ¶ 6, Exs. 4, 5, 8.  The Changes in Multiple

4   Occupancy form contained a statement setting forth KCM's practice and procedure of

5   requiring all new residents to submit a rental application, as well as consent to a credit

6   check, prior to being permitted to rent an apartment at Marbaya.  Def.'s Mot. Summ.

7   Judg. at 8.

8       After Madrid's roommate Suzette Moncada moved out of the apartment on

9   September 1, 2009, Madrid sought to have another roommate, Sara Fernandez, move in.

10  Sandoval Decl. ¶ 3, Ex. 1, 98:2-10.  Fernandez submitted a rental application to KCM and

11  agreed to a credit check.  *Id.*  KCM denied Fernandez permission to move in with Madrid

12  based on the results of the credit check.  Def.'s Mot. Summ. Judg. at 10.

13      **4.  Madrid's Request for Lease Modification**

14      Mirasol Ubarco and Alfredo Guarin entered into a two-year lease agreement with

15  defendant KMF on April 28, 2009.  Defs.' Mot. Summ. Judg. at 10; Rodriguez Decl. ¶ 12,

16  Ex. 5, Dkt. No. 31-4.  In September 2009, approximately four months after signing the

17  two-year lease agreement, Ubarco and Guarin met with on-site property manager

18  Bzowski  to inform her of their financial difficulties and to discuss possible options to

19  terminate their lease agreement.  Defs.' Mot. Summ. Judg. at 10; Bzowski Decl. ¶ 4.

20  During that meeting, Bzowski informed Ubarco and Guarin that if they breached  their

21  lease agreement by vacating prior to the end of the lease term, they would be responsible

22  for payment of rent as long as their unit remained vacant.  *Id.*; Sandoval Decl. ¶ 4, Ex. 1,

23  52:22-53:21.

24

25      [2] Defendants object to the statement in Madrid's declaration that her previous roommates
26  acted informally as Madrid's caregivers, asserting that the evidence contradicts Madrid's prior
    deposition testimony.  Defs.' Objection Evid. at 2:9-11.  The Court finds that the evidence does
27  in fact contradict Madrid's prior deposition testimony and GRANTS defendants' objection.  The
    Court therefore strikes those portions of the Madrid declaration.
28

Madrid, who had been friends with Ubarco and Guarin for approximately ten years, permitted Ubarco and Guarin move in to her apartment on December 8, 2009.  Pl.'s Opp'n Mot. Summ. Judg. at 3-4; Sandoval Decl. ¶ 3, Ex. 1, 108:21-109:20.

On December 6, 2009, Madrid submitted a written request to defendants in which she stated "I agree to accommodate Mirasol Ubarco in my said apartment #120 in order to assist them with their financial hardship/situation."  Madrid Decl. ¶ 6, Ex. 1.  Attached to her request was a Changes in Multiple Occupancy form, which differed from previous Changes in Multiple Occupancy forms in that it was created by Madrid and omitted all references to rental applications or credit report requirements.  Sandoval Decl. ¶ 14, Ex. 12.  On December 8, 2009, property manager Rodriguez issued a letter to Madrid stating that her "request for housing accommodations for Mr. Alfredo Guarin and Mis Mirasol Ubarco" could not "be honored" for reasons that, "due to the resident confidentiality agreement," could not be "disclose[d] directly" to Madrid.  Sandoval Dec. ¶ 3, Ex. 1, 136:22-137:10; Rodriguez Decl. ¶ 14, Ex. 13.  Regardless of defendants' denial of Madrid's request, Ubarco and Guarin moved into Madrid's apartment that same day.  Sandoval Decl. ¶ 3, Ex. 1, 47:1-8, 62:14-16, 158:17-19.  From December 10 through December 20, Madrid continued to make written requests to Rodriguez to allow Ubarco and Guarin to remain as her roommates.  Madrid Decl. ¶ 6, Exs. 4, 5, 7.  Rodriguez did not respond to these requests in writing but agreed to meet with Madrid, Ubarco, and Guarin.  Pl.'s Opp'n Mot. Summ. Judg. at 5.  On December 23, 2009, Rodriguez and Bzowski met with Madrid, Ubarco, and Guarin but the parties came to no agreement.  *Id.*

### 5.  Notices to Quit and Unlawful Detainer Action

Defendants issued to two separate three-day notices to quit to Madrid, Ubarco, and Guarin–one on December 10, 2009 and a second on January 12, 2010.  Madrid Decl. ¶ 6, Ex. 3; Sandoval Decl. ¶ 18, Ex. 16.  After expiration of the notices to quit, defendants filed an unlawful detainer action in the Superior Court of California, Alameda County.  Sandoval Decl. ¶ 3, Ex. 1, 151:16-152:4.  The case resulted in a judgment against Madrid in February 2010.  *Id.*  After entry of judgment, Madrid moved from the Marbaya to a

1  different apartment in Fremont.  *Id.* at 28:15-29:22.  Plaintiff has not had a caregiver since

2  moving to the new apartment and has taken no action to obtain a caregiver.  *Id.* at 30:19-

3  21, 31:20-24, 32:6-10.

4  ## II.  STANDARD OF REVIEW

5  Summary judgment is appropriate when it is demonstrated that there exists no

6  genuine issue as to any material fact, and that the moving party is entitled to judgment as

7  a matter of law.  Fed. R. Civ. P. 56(c); *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 743 F.2d

8  1310, 1313 (9th Cir. 1984).

9  Under summary judgment practice, the moving party "always bears the initial

10 responsibility of informing the district court of the basis for its motion, and identifying

11 those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

12 on file, together with the affidavits, if any,' which it believes demonstrate the absence of a

13 genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)

14 (quoting Fed. R. Civ. P. 56(c)).  Summary judgment should be entered against a party

15 who fails to make a showing sufficient to establish the existence of an element essential

16 to that party's case, and on which that party will bear the burden of proof at trial.  *Id.*

17 If the moving party meets its initial responsibility, the burden then shifts to the

18 opposing party to establish that a genuine issue as to any material fact actually does exist.

19 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ruffin v.*

20 *Cnty. of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979).

21 In attempting to establish the existence of a factual dispute, the opposing party

22 may not rely upon the mere allegations or denials of its pleadings, but is required to

23 tender evidence of specific facts in the form of affidavits, and/or admissible discovery

24 material, in support of its contention that a dispute exists.  Fed. R. Civ. P. 56(e);

25 *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

26 contention is material, that is, a fact that might affect the outcome of the suit under the

27 governing law, and that the dispute is genuine, meaning the evidence is such that a

28 reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587-88 (citations omitted); *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-1245 (E.D. Cal. 1985).  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

## III.  DISCUSSION

### A.  Madrid Raises No Triable Issue of Material Fact as to Her FHAA Claim

The FHAA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."  42 U.S.C. § 3604(f)(2).  Discrimination may be shown through disparate treatment, disparate impact, or refusal to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped individual] an equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204(a); *Gamble v. City of Escondido*, 104 F. 3d 300, 304 (9th Cir. 1997).

A prima facie case of discrimination under the FHAA for failure to accommodate has four elements.  The "plaintiff must demonstrate that (1) she suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the

plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebler v. M&B Associates*, 343 F.3d 1143, 1147 (9th Cir. 2003) (citing *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997); *Giebler v. M&B Associates*, 343 F.3d 1143, 1148 (9th Cir. 2003). If the plaintiff establishes an FHAA claim, the defendant has the burden to demonstrate that the requested accommodation was unreasonable or would create undue hardship. *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1156 (9th Cir. 2003). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006) (quoting *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994).

**1. Madrid's Handicap and Defendants' Knowledge of Handicap**

The FHAA defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1). To prove the nature and extent of her handicap, Madrid includes the declaration of her treating physician, Anita Bhandia, providing that Madrid's disabilities, particularly the fibromyalgia and severe fatigue syndrome relating to the fibromyalgia, "substantially limit her ability to walk and move about as necessary for activities of daily living, in that she experiences generalized bodily pain and she easily fatigues when she attempts to engage in such activities." Bhandia Decl. ¶ 3. Defendants do not dispute that Madrid is handicapped for purposes of the FHAA. Def.'s Mot. Summ. Judg. at 17.

Furthermore, defendants do not dispute that Bzowski and Rodriguez either knew or should have known about Madrid's condition at the time that Madrid requested that Urbaco and Guarin move in to her apartment. *See id.* The disputed issue is the third prong of the test.

//

1

**2. "Necessary" Accommodation under the FHAA**

2

In order to prove that an accommodation may be necessary under the FHAA,

3

"plaintiffs must show that, but for the accommodation, they will likely be deprived of the

4

opportunity to enjoy the housing of their choice." *United States v. California Mobile*

5

*Home Park*, 107 F.3d 1374, 1380-81 (9th Cir. 1997). This means the plaintiff has the

6

initial burden of requesting an accommodation, establishing the existence of a disability

7

and demonstrating that a live-in aide "may be necessary to afford . . . equal opportunity."

8

42 U.S.C. §3604(f)(3)(B).

9

Madrid asserts in the first amended complaint that her "disability made it

10

necessary for her to have the live-in caretakers in order for Plaintiff to continue to possess

11

the same opportunity to use and enjoy her Apartment as did other nondisabled tenants

12

living at the Apartments." FAC ¶ 29. Madrid further asserts in opposition to defendants'

13

motion for summary judgment that "the evidence shows thus assisting Ubarco/Guarin was

14

only one of Madrid's purposes, with her other purposes being to alleviate her own burden

15

of paying rent, and, more importantly, obtaining their assistance in performing necessary

16

household chores that she could perform only with great physical difficulty if at all."

17

Pl.'s Opp'n Mot. Summ. Judg. at 8. Defendants contend that Madrid offers no evidence

18

to support her claim that a reasonable accommodation was "necessary" to afford Madrid

19

"an equal opportunity to use and enjoy" the premises and that her request was pretextual.

20

Defs.' Mot. Summ. Judg. at 18.

21

**a. Madrid's Previous Roommates**

22

Defendants point to evidence that Madrid, though residing with a number of

23

individuals during the course of her tenancy in Marbaya, never lived with these

24

individuals as anything more than roommates. Defs.' Reply Mot. Summ. Judg. at 9, Dkt.

25

No. 36.

26

Madrid opposes these statements in her declaration opposing the motion: "while

27

living there [Marbaya Apartments], I repeatedly sought and obtained roommates not only

28

to ease the financial burden of paying that rent from my limited income, but more

importantly to ameliorate my above-described difficulties with performing household chores in the course of using and enjoying my apartment . . . As I saw it, they were acting informally as my caregivers, even though we had no formal agreements for them to do so, and even though I did not pay them to do so.  In that Defendants approved these roommates under Defendants' standard criteria, I had no need to ask Defendants to reasonably accommodate my disabilities by modifying their criteria in order to allow the roommates to move in with me."  Madrid Decl. ¶ 3.

During deposition, however, Madrid testified that the living arrangement between herself and her prior roommates, Lasam, DeLeon, and Moncada, was nothing more than that of roommates who paid rent in accordance with a lease agreement.  Sandoval Decl. ¶ 3, Ex. 1 (Madrid Deposition), 39:24-45:3, 45:8-21.  Madrid expressed that while her roommates volunteered to help her with housework, when she posted the room for rent, "it was supposed to be–as far as I can remember, it was supposed to be just to rent the room, a regular roommate . . . So I did not ask any expectations of other things to be done."  Sandoval Decl. ¶ 3, Ex. 1, 42:11-20.  To the extent that Madrid's declaration attempts to create a genuine issue of material fact by contradicting her own testimony, she cannot do this.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

### b.  Madrid's Roommate Relationship with Ubarco and Guarin

Defendants assert that no evidence supporting Madrid's claim that a reasonable accommodation was "necessary" to afford Madrid an equal opportunity to use and enjoy the premises.  Def.'s Mot. Summ. Judg. at 18.  Madrid contends that defendants "should have reasonably accommodated Madrid by waiving the criteria that rendered Ubarco/Guarin ineligible to move in with Madrid."  Pl.'s Opp'n Mot. Summ. Judg. at 7.

As to her arrangement with Ubarco and Guarin to act as her caregivers, Madrid asserts the agreement was reached "[m]ore explicitly than with her prior roommates" and

1  that "Madrid reached this agreement with Ubarco/Guarin at the outset."  Pl.'s Opp'n Mot.

2  Summ. Judg. at 3.

3       At deposition, however, Madrid described the nature of her roommate relationship

4  with Guarin and Ubarco in the same manner as that of previous roommates "to help each

5  other out . . . we did not even discuss about a specifically caregiving needs at that time,

6  but to help each other out with the things both ways."  Sandoval Decl. ¶ 3, Ex. 1, 47:5-24;

7  49:13-21 ("Q: But you had no specific agreement with Miss Ubarco or Mr. Guarin as to

8  what assistance or caregiving they were going to provide to you; correct?" A: "We agreed

9  that they would be helping me out with what–whatever is needed."); 106:3-107:6 (Q:

10 "Did you have any understanding as to what caregiver services Mr. Guarin was going to

11 provide to you?" A: "We did not really talk of any specific things that he is supposed –

12 Mr. Guarin is supposed to perform for me . . . So there was no agreement as far as

13 specifically what he needs to do for me . . . it's all a compounded agreement between the

14 three of us, that whoever needs help, whatever help we can offer to one another, we

15 would give it to one another.").

16      Defendants further point to undisputed evidence that at no time between December

17 8, 2009, when defendants informed Madrid that they did not approve her roommate

18 request, until January 16, 2010, after the three-day notice to quit expired, did Madrid ever

19 mention that Ubarco and Guarin were to serve as her caregivers, as opposed to as her

20 roommates to assist with their financial situation.  *See* Madrid Decl. ¶ 6, Ex. 4 (December

21 10 email from Madrid to Rodriguez stating "As discussed, I agree to accommodate

22 Mirasol Ubarco in my said apartment #120 in order to assist them with their financial

23 hardship/situation."); *id.*, Ex. 5 (December 11, 2009 email from Madrid to Rodriguez

24 stating "And YES, I am letting my friends Mirasol Ubarco and Alfredo Guarin, who are

25 now homeless, to stay at my place, and I am doing what I needed to do to abide by the

26 contract.  Also, please note that I am willing to offer them my home even for FREE if that

27 will help the situation . . .  I feel that it is my duty and obligation to help in any way that I

28

1    could."); *id.*, Ex. 6 (December 13 email from Madrid to Rodriguez stating "Regarding

2    your previous tenants from apartment #18, Mirasol Ubarco and Alfredo Guarin, I've

3    invited them to live with me as companions and to be able for us to help each other out . .

4    . remember they are NOT criminals . . . they are just homeless right now, and I am willing

5    to take them in."; *id.*, Ex. 7 (December 20 letter from Madrid to Rodriguez stating "I,

6    myself, am experiencing some hard times right now . . . since the Ubarcos and Guarins

7    are also experiencing the same, we decided to join forces to help each other out.").

8    Though these communications referenced that Madrid has a disability, at no time prior to

9    January 16, 2010 did she request that Ubarco and Guarin move in with her as caregivers.

10          For the first time on January 16, 2010, Madrid stated in an email to Rodriguez,

11   "because of my disability, I've decided to invite Mirasol Ubarco and Alredo Guarin to

12   stay with me as my companions to care for me."  Sandoval Decl. ¶ 16, Ex. 14.  Yet even

13   after this request, Madrid and Guarin both confirmed that Ubarco and Guarin were not

14   working as Madrid's caregivers.  *See* Sandoval Decl. ¶ 3, Ex. 1, at 174:11-25.  In a

15   January 29, 2010 email exchange between Madrid and a representative from the Fremont

16   Fair Housing and Landlord-Tenant Services, Madrid wrote:

17          Alfredo [Guarin] and myself were also at the Bay Area Legal Aid office
       yesterday and had a meeting with a Ms. Mary Ann Meany and I got so
18          disappointed and upset once again.  I tried very hard to get there even
       though I was feeling very sick yesterday, in order to see what they can
19          help us with.  But I felt a lot sicker after the meeting.  I felt so rushed and
       as if we were in a trial.  The lady started asking Alfredo if he is working
20          for me and if he is my caregiver, etc. etc.  And of course, Alfred said NO.
       As we both know, they are not really working for me and I am not really
21          paying them for the care that they are giving me.  Since we treat other
       more of a family, being friends for a long time and since we both are
22          experiencing some hardships in life financially and health wise, we
       decided to live together to help each other out.

23
       Sandoval Decl. ¶ 17, Ex. 15.  This evidence establishes that even after her January
24
     16, 2010 request, Madrid admitted that Ubarco and Guarin were not in fact caregivers.
25
     //
26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### c. Facts Relating to Ubarco/Guarin Lease Agreement Are Not Relevant to this Dispute

In her opposition, Madrid attempts to raise disputed facts as to whether Ubarco and Guarin were in breach of their lease agreement with KMF and therefore ineligible under defendants' existing rental criteria to move in as Madrid's roommates. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The issue of whether Ubarco and Guarin breached their lease agreement with defendants has no bearing on whether the presence of Ubarco and Guarin was necessary to afford Madrid equal use and enjoyment of her apartment. As this factual dispute is unnecessary to the issue presented, Madrid has not created a material factual dispute to overcome summary judgment.

In sum, the evidence supports defendants' contention that Madrid has provided no evidence of disputed material facts to support her claim that a reasonable accommodation was "necessary" to afford Madrid an equal opportunity to use and enjoy the apartment and that her request on January 16, 2010, coming after the three-day notice to quit, was nothing more than pretext. Because Madrid cannot establish all four elements necessary to support her FHAA claim, summary judgment as to Madrid's claim of discrimination based on failure to reasonably accommodate Madrid is appropriate.

## IV.  CONCLUSION

Because no triable issue of material fact exists to support Madrid's allegations that defendants failed to reasonably accommodate Madrid in violation of the FHAA, defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Date: November 6, 2012

NATHANAEL M. COUSINS
United States Magistrate Judge